## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOS. 1:16-cr-177 |
| | ) | 1:23-cv-171 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| JUAN J. HIRALDO, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of *pro se* defendant Juan J. Hiraldo ("Hiraldo") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 30 (Motion); Doc. No. 31-1 (Supplement).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 34 (Response).) For the reasons set forth herein, the motion to vacate, as supplemented, is DENIED.

### I.   BACKGROUND

On May 25, 2016, an indictment issued charging Hiraldo with one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of being a felon in possession of ammunition and a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 8 (Indictment).)

On September 22, 2016, Hiraldo entered a counseled plea of guilty to the charges in the indictment. (Minutes of Proceedings [non-document], 9/22/2016.) During the guilty plea hearing, the magistrate judge conducted a standard plea colloquy in compliance with Rule 11 of the Federal Rules of Criminal Procedure. (Doc. No. 20 (Transcript of Guilty Plea Hearing); *see* Doc. No. 18

(Consent to Referral to Magistrate Judge).) At the start of the hearing, the magistrate judge asked Hiraldo if he had been afforded sufficient time to discuss the charges and his response thereto with counsel. Hiraldo answered the question in the affirmative and further indicated that he was completely satisfied with the representation he had received from defense counsel (*See* Doc. No. 20, at 8–9[1].) The magistrate judge then reviewed the elements and statutory penalties of the crimes to which Hiraldo was pleading guilty, as well as the constitutional rights Hiraldo was forfeiting by changing his plea. (*Id.* at 9–23.) As to each, Hiraldo indicated that he understood and was prepared to change his plea to guilty. The magistrate judge also requested that the Assistant United States Attorney place on the record the facts the government believed would support a guilty plea in this case. (*Id*. at 28–31.) Hiraldo stated that he agreed with the government attorney's recitation of the facts, and that he was pleading guilty because he did, in fact, commit the charged offenses. (*Id*. at 30–31.) At the conclusion of the plea colloquy, the magistrate judge advised that it would be her recommendation that the Court accept Hiraldo's guilty plea to the charges in the indictment as knowing and voluntary. (*Id*. at 33; *see* Doc. No. 19 (Report and Recommendation ["R&R"]).) On October 27, 2016, there being no objection to the R&R, and after *de novo* review of the record, the Court entered an order adopting the R&R, approving the guilty plea, and adjudging Hiraldo guilty of the charges in the indictment. (Doc. No. 21 (Order).)

Prior to sentencing, a final presentence investigation report ("PSR") was prepared. (Doc. No. 23.) The writer of the PSR concluded that Hiraldo would qualify as both a career offender under the federal sentencing guidelines and an armed career criminal under the Armed Career

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the former premised on prior Ohio felony convictions for arson, assault, and domestic violence. (*Id*. ¶¶ 42–43.) The PSR writer further concluded that Hiraldo would be subject to a 15-year mandatory minimum sentence due to his designation as an armed career criminal. (*Id*. ¶ 69.)

The sentencing hearing was conducted on January 12, 2017. (Minutes of Proceedings [non-document], 1/12/2017.) At sentencing, the Court applied a base level offense of 24, and, after applying appropriate adjustments, arrived at an adjusted offense level of 31. (Doc. No. 29 (Transcript of Sentencing Hearing), at 3–5, 23.) The Court also determined that Hiraldo's prior criminal convictions, as set forth in the PSR, produced a criminal history score of 11, to which 2 points were added because the instant offenses were committed while Hiraldo was under a state court sentence. (Doc. No. 29, at 4–5; *see* Doc. No. 23 ¶¶ 29–38.) With 13 criminal history points, the Court determined that Hiraldo had a criminal history category of VI. (Doc. No. 29, at 5.) Relevant to the present motion to vacate, the Court also determined that Hiraldo was a criminal history category VI for the additional reasons that he qualified as both a career offender and an armed career criminal. (*Id*.) After applying a three-level reduction for acceptance of responsibility, the Court arrived at an advisory guideline range of 188 to 235 months. (*Id*. at 22–23.) The Court sentenced Hiraldo to a low-end guideline sentence of 188 months. (*Id*. at 31; Doc. No. 25 (Judgment).)

Hiraldo did not take a direct appeal. Instead, on June 14, 2022, a one-page document was filed on the docket in which Hiraldo raised the question of whether a change in the law rendered his classification as an armed career criminal improper. (Doc. No. 30.) Citing *Borden v. United States*, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021), Hiraldo suggested that his three prior state court

3

felony conviction for arson, assault, and domestic violence no longer qualify as "crimes of violence" for purposes of the ACCA. (*Id.* at 1.)

On June 16, 2022, the Court issued a non-document order advising Hiraldo that it construed this document as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 but noting that the document failed to request any relief. (Order [non-document], 6/16/2022.) The Court, therefore, granted Hiraldo leave until July 1, 2022 to "either supplement his motion to specify the relief, if any, he is seeking or notify the Court that he is not seeking relief from his sentence under § 2255." (*Id.*)

Hiraldo did not timely respond to the Court's request for supplementation or clarification. Instead, on November 29, 2022, he filed a motion for an extension of time in which to supplement his motion to vacate. (Doc. No. 31.) In his motion, he maintained that he did not have access to FCI Hazelton's legal assistance program for purposes of drafting his supplement. (*Id.* at 2.) He also complained that, due to what he viewed as FCI Hazelton's "abuse of COVID-19 modified operations/programs[,]" he had been "confined to his housing unit living quarters for days, weeks and months[.]" (*Id.* at 2–3.) Appended to Hiraldo's motion for an extension of time was a document—prepared on Form AO 243—which the Court construed as Hiraldo's supplement. (Order [non-document], 1/27/2023; *see* Doc. No. 31-1.)

As supplemented, Hiraldo's motion to vacate raises three grounds for relief. In Ground One, Hiraldo alleges that he was actually innocent of the armed career criminal classification, again citing the Supreme Court's decision in *Borden, supra*. (Doc. No. 31-1, at 4–6.) As part of this first ground for relief, Hiraldo also maintains that the Court erroneously "allowed [him] to plead guilty to a non-existing possession with intent to distribute crack cocaine . . . as opposed to

4

[a] simple possession" charge. (*Id*. at 4.) He also brings two new claims sounding in ineffective assistance of counsel. In Ground Two, Hiraldo alleges that his trial counsel was ineffective for failing to object to the PSR's advisory guideline calculation, based, in part, on the ACCA enhancement. (*Id*. at 7–9.) He also suggests that, had his counsel investigated his erratic and bizarre behavior, counsel would have discovered that Hiraldo was addicted to drugs. Armed with this information, Hiraldo believes counsel could have "invoked a valid affirmative lesser included [of]fense of simple possession and [Hiraldo] could have received a lesser sentence or [been] found not guilty of violating" 18 U.S.C. § 841. (*Id*. at 8–9.) In Ground Three, Hiraldo posits that defense counsel was ineffective for erroneously advising him that he had no meritorious appellate issues and for failing to file a notice of appeal. (*Id*. at 11–12.)

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *see Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S. Ct. 1710, 123 L. Ed. 2d

353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1064, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 1584, 1603–04, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1998).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a petitioner challenges the validity of a plea, the representations of the petitioner, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Subsequently-presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*.

A court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255.") (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'"). Where (as here) the judge considering the § 2255 motion also presided over the sentencing hearing, the judge may rely on his or her recollections of those proceedings. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court finds that an evidentiary hearing is not warranted in the present case. The undisputed facts in the record demonstrate that Hiraldo is entitled to no relief on Ground One because he was properly classified as an armed career criminal under the ACCA. Further, the Court finds that the uncontradicted record demonstrates that Hiraldo's ineffective assistance of counsel claims (Grounds Two and Three) are time-barred.

### III. HIRALDO'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE TIME-BARRED

The Anti-Terrorism and Effective Death Penalty Act ("ADEPA") "provides a one-year

statute of limitations for filing a federal habeas petition." *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). Specifically, a prisoner must file his § 2255 motion within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the judgment of conviction was entered on January 12, 2017. Because Hiraldo did not appeal his conviction or sentence, the one-year statute of limitations period began to run 14 days later on January 26, 2017. *See Johnson v. United States*, 457 F. App'x 462, 465 (6th Cir. 2012); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); Fed. R. App. P. 4(b)(1). Hiraldo was required to file his § 2255 motion by January 26, 2018. Instead, he filed the instant motion more than four years after the limitations period had expired. Accordingly, the motion is not timely under § 2255(f)(1).

As set forth above, Ground One is premised on the Supreme Court's ruling in *Borden, supra.*, which was issued on June 10, 2021. Pursuant to § 2255(f)(3), petitioner was required to raise a claim based on that decision no later than June 10, 2022. The prison mailbox rule, announced in *Houston v. Lack*, 487 U.S. 266, 270–72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988), provides that a federal prisoner's *pro se* motion to vacate is ordinarily deemed filed on the date

8

that it was submitted to prison mailing officials. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999). While Hiraldo's motion was filed on the docket on June 14, 2022, it was postmarked on June 8, 2022. (*See* Doc. No. 30, at 2.) Accordingly, under the mailbox rule, the issue raised in Ground One of the motion relating to the ACCA enhancement is timely.

The remaining two grounds, both sounding in ineffective assistance of counsel and raised for the first time in the supplement, are not premised on a recently-announced Supreme Court rule. Additionally, Hiraldo does not identify an impediment created by the government, or new facts supporting a claim that were subsequently discovered through the exercise of due diligence that prevented him from raising Grounds Two and Three in a timely fashion. Instead, he notes that he timely filed his initial motion raising Ground One, but was prevented from timely filing his supplement due to unspecified "unconstitutional and unlawful abuse" by the Bureau of Prisons ("BOP") and his facility of the procedures and protocols put in place to address the health crisis associated with the COVID-19 pandemic. (Doc. No. 31-1, at 16.) He also complains that trial counsel advised him that "he had no meritorious, appealable issues and any appeal would be frivolous and not well taken." (*Id.*)

Three observations are in order here. First, the Court reiterates that Ground One is timely because it was filed within one year of the Supreme Court's ruling in *Borden, supra*. Even if the Court finds that Grounds Two and Three in their entirety "relate back"[2] to the filing date of June 8, 2022, those grounds do not rely on *Borden*, and cannot, therefore, be considered timely under §

---

[2] Rule 15(c) of the Federal Rules of Civil Procedure applies to habeas petitions filed under § 2255, and, pursuant to Rule 15(c)(2), an amended pleading relates back to the date of the original pleading when the claim asserted in the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.*" See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 2570, 162 L. Ed. 2d 582 (2005) (quoting Fed. R. Civ. P. 15(c)(2)). Arguably, portions of Grounds Two and Three, though not premised on *Borden*, relate to Hiraldo's classification under the ACCA and would conceivably relate back to the original motion.

2255(f)(3).[3]

Second, counsel's purported failure to file a notice of appeal cannot save these claims. The Sixth Circuit has recognized that the delayed limitation period under § 2255(f)(4) may apply to claims of ineffective assistance of counsel premised on counsel's failure to appeal a sentence. *See Moore v. United States*, 438 F. App'x 445, 447–48 (6th Cir. 2011). In such a case, the appropriate inquiry under § 2255(f)(4) is "when a duly diligent person in petitioner's circumstances would have discovered that no appeal has been filed." *Id*. at 447 (quotation marks and citation omitted). It is the petitioner's burden to demonstrate his due diligence. *Id*. The period Hiraldo could have filed a timely appeal began to run on January 12, 2017, when his judgment was entered. (*See* Doc. No. 25.) So, if a duly diligent person in Hiraldo's circumstances would have discovered that no appeal had been filed sometime in the approximately five and one-half year period between the final judgment and the filing of his motion, his motion is also not timely under § 2255(f)(4).

Hiraldo does not state when he learned that his attorney had not filed a notice of appeal. According to the motion, he and counsel discussed the possibility of an appeal, as counsel allegedly advised him that he had no meritorious appellate issues. (Doc. No. 31-1, at 11.) He also maintains

---

[3] In his ineffective assistance of counsel claims, Hiraldo does criticize trial counsel for failing to object to the use of his prior Ohio felony convictions as a basis for enhancing his sentence and for failing to file a notice of appeal so that he could challenge his "misapplied ACCA enhanced sentence." (Doc. No. 31-1, at 7, 11.) He does not cite *Borden, supra*., or otherwise suggest that counsel was ineffective for failing to anticipate a change in the law that occurred more five years after he was sentenced. Nor could he, as "counsel is not typically deficient for failing to anticipate a change in law[.]" *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (citation omitted); *see Malone v. United States*, 817 F. App'x 188, 191 (6th Cir. 2020); *see also Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) ("failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"); *see e.g., United States v. Cantrell*, No. 3:18-cr-42, 2023 WL 3304309, at *3 (D. Ore. May 8, 2023) (rejecting ineffective assistance of counsel claim premised on trial counsel's failure to anticipate *Borden*). And in any event, as explained below, Hiraldo's sentence was not impacted by *Borden*. Accordingly, any timely ineffective assistance of counsel claim premised on *Borden* would have failed on the merits. *See Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010) (counsel was not ineffective for failing to raise patently frivolous arguments); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (the required showing of prejudice for ineffective assistance of counsel claims cannot be made if the unasserted argument lacked merit).

that he wished to file an appeal but that his counsel failed to assist him and "refused to file an appeal and did not [accept] any more correspondence from Hiraldo."[4] (*Id.* at 12.) At sentencing, the Court advised Hiraldo that he had a right to appeal and that any such appeal must be filed within 14 days of the judgment. (Doc. No. 29, at 36–37.) Aware that his counsel was purportedly refusing to file an appeal, acting with due diligence, Hiraldo should have discovered by the end of the 14-day period, if not within a reasonable time thereafter, that no appeal had been filed.[5] *See Waugh v. United States*, No. 18-6016, 2019 WL 4844477, at *2 (6th Cir. Jan. 4, 2019) (defendant was not entitled to appeal the district court's denial of § 2255 motion on the basis of timeliness where he was informed at sentencing that he had 14 days in which to appeal but failed to discover during that window whether his counsel had filed a notice of appeal). Even if the Court credits Hiraldo's representation that his counsel refused to file the notice, Hiraldo provides no explanation for why that alleged failure prevented him from filing his § 2255 motion until more than five years after his sentence was entered. He is not entitled to delayed commencement of the limitations period under § 2255(f)(d).

Third, Hiraldo is not entitled to equitable tolling based on any disruption in services or lockdowns at his facility associated with the recent COVID-19 pandemic. The statute of limitations in 28 U.S.C. § 2255(f) is not a jurisdictional bar, and it is subject to equitable tolling under

---

[4] Hiraldo does not state that he actually asked his trial counsel to file a notice of appeal. Nevertheless, given the liberal interpretation that is to be applied to *pro se* pleadings, *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing, among authority, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)), the Court will construe his motion as stating that his counsel "refused" to file an appeal after Hiraldo requested that he do so.

[5] At the end of his sentencing hearing, the Court advised Hiraldo that he had a right to appeal his conviction and sentence. He was also advised that he had the right "to apply for leave to appeal in forma pauperis[, and] in that event the clerk of court [would] prepare and file a notice of appeal upon [his] request." (Doc. No. 29, at pp. 36–39.) Hiraldo does not suggest that he opted to request that the clerk of court prepare and file a notice of appeal on his behalf even after discovering that his attorney was purportedly refusing to file an appeal.

extraordinary circumstances. *Reed v. United States,* 13 F. App'x 311, 312 (6th Cir. 2001). To warrant tolling under traditional equitable principles, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); *see Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (quoting *Holland*, 560 U.S. at 649). The Sixth Circuit has repeatedly made clear its view that "equitable tolling relief should be granted only sparingly." *See Amini v. Oberlin College,* 259 F.3d 493, 500 (6th Cir. 2001) (citations omitted). Such motions are evaluated on "a case-by-case basis, with the petitioner having the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011)); *see Johnson v. United States*, 457 F. App'x 462, 469 (6th Cir. 2012) (similar).

Courts have concluded that the COVID-19 pandemic "could—in certain circumstances—conceivably warrant equitable tolling" for § 2255 motions. *United States v. Haro*, No. 8:18-cr-66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020). These "certain circumstances" involve defendants who had been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19. *See, e.g. Dunn v. Baca*, No. 3:19-cv-702, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020) (finding equitable tolling because the COVID-19 pandemic had, among other things, halted ongoing investigations and prevented counsel from obtaining necessary court records); *Fitzgerald v. Shinn*, No. 19-cv-5219, 2020 WL 3414700, at *2 (D. Ariz. June 22, 2020) (Petitioner was entitled to equitable tolling during pandemic where he demonstrated, through declarations from members of defense team, his efforts to investigate and

12

pursue his rights under § 2255).

Courts have refused to permit equitable tolling based on prison lockdowns and restrictions during the COVID-19 pandemic where the petitioner was not diligently pursing his rights before the pandemic started. *See, e.g., United States v. Lara*, No. 6:18-cr-95, 2021 WL 4087613, at *3 (S.D. Tex. Sept. 8, 2021) ("Movant has failed to provide any explanation as to why she could not have filed her § 2255 motion during the first four months of her sentence, before the Bureau of Prisons enacted COVID-19 restrictions in March of 2020.") (collecting cases); *Scott v. United States*, No. 4:21-cv-838, 2021 WL 3910766, at *3 (E.D. Mo. Sept. 1, 2021) (where inmate had 4 months before the start of the pandemic to pursue his motion, inmate's failure to allege that "he actually did anything that would arguably amount to diligent pursuit of his rights" during that time-period was fatal to his claim); *United States v. Barnes*, No. 18-cr-154, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) ("Even assuming that a lockdown due to the COVID-19 pandemic delayed defendant's ability to file his motion, it does not explain the more than one-year delay. COVID-19 measures have been in effect since March 2020, and defendant could have filed his motion long before March 2020.").

Here, Hiraldo's one-year period to file his motion to vacate expired *more than two years before* any BOP restrictions associated with the COVID-19 pandemic went into effect. He neglects to identify any actions he took both before and during the pandemic to diligently pursue his rights. He has, therefore, failed to demonstrate his entitlement to equitable tolling. *See United States v. Henry*, No. 2:17-cr-180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) (emphasis in original) ("The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his

13

rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion." (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005))).

The record does not show that Hiraldo's ineffective assistance of counsel claims are timely under any applicable sub-provision of § 2255(f), and Hiraldo has not satisfied his burden of demonstrating his entitlement to equitable tolling. Accordingly, Grounds Two and Three are time-barred.

## IV. THE RULING IN *BORDEN* DOES NOT IMPACT HIRALDO'S SENTENCE

In Ground One, Hiraldo argues that, in the wake of the Supreme Court's ruling in *Borden*, his prior state court felony convictions cannot support his "ACCA enhanced sentence" and that to allow his sentence to stand would result in a "miscarriage of justice[.]" (Doc. No. 31-1, at 6.)

ACCA imposes a mandatory minimum sentence of fifteen years for a conviction under § 922(g) if the defendant has three or more previous convictions for either "violent felon[ies] or "serious drug offense[s]" or both. § 924(e)(1). A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult," that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id*. § 924(e)(2)(B)(i).

In *Borden*, a plurality of the Supreme Court held that a criminal offense that requires only a mens rea of recklessness does not qualify as a "violent felony" under the ACCA's use-of-force (or elements) clause. *Borden*, 141 S. Ct. at 1834. The plurality explained that the phrase "use of physical force against the person of another" in the ACCA's elements clause "covers purposeful

14

and knowing acts, but excludes reckless conduct[.]" *Id*. at 1826. "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id*. "Reckless conduct," in contrast, "is not aimed in that prescribed manner." *Id*. at 1825.

As set forth above, three prior felony convictions were used to qualify Hiraldo as an armed career criminal: (1) Ohio felony arson, under Ohio Rev. Code § 2909.03; (2) Ohio felonious assault, under Ohio Rev. Code 2903.13(A); and Ohio felony domestic violence, under Ohio Rev. Code § 2919.25(A). (*See* Doc. No. 29, at 5; Doc. No. 23 ¶¶ 42–43.) Hiraldo argues that, in light of the ruling in *Borden*, the crimes underlying these prior convictions no longer qualify as "violent felonies" under the ACCA. (Doc. No. 30, at 1.) The government counters that, "[u]nder Sixth Circuit precedent, Hiraldo's arson, assault, and domestic violence convictions qualify as ACCA predicates, and *Bord[e]n* does not undermine this conclusion." (Doc. No. 34, at 6.) The Court agrees with the government that *Borden* provides no basis upon which to disturb Hiraldo's sentence.

Beginning with felony arson, binding Sixth Circuit precedent establishes that Ohio felony arson, under § 2909.03A, qualifies as a violent felony under ACCA's enumerated-offense clause. *See United States v. Gatson*, 776 F.3d 405, 410 (6th Cir. 2015). In *Gatson*, the Sixth Circuit held that an arson conviction under § 2909.03A qualifies as "generic" arson because it is specifically listed in § 924(e) as a violent felony, and generic arson embraces the intentional or malicious burning of any property. *Id*. Because *Borden* only impacted the elements (or use-of-force) clause of ACCA, Hiraldo's arson conviction still qualifies under the enumerated-offense clause as a predicate violent felony for purposes of ACCA enhancement. *See Borden*, 141 S. Ct. at 1834; *see,*

*e.g., United States v. Brown*, 601 F. Supp. 3d 267, 275 (N.D. Ohio 2022) (Ohio's aggravated robbery statute unaffected by *Borden* because crime still qualified as a violent felony under the enumerated-offense clause).

Ohio's felony assault statute also continues to qualify as a violent felony. An assault conviction under Ohio Rev. Code § 2903.13(A) requires the State to prove that the individual "*knowingly* cause[d] or attempt[ed] to cause physical harm to another or to another's unborn." § 2903.13(A) (emphasis added). Assault under § 2903.13(A) is, therefore, a violent felony under the ACCA because it requires the knowing use of force. *See United States v. Price*, 559 F. App'x 496, 498 (6th Cir. 2014) ("A conviction for assault under § 2903.13(A), i.e., for 'knowingly' causing or attempting to cause physical harm to another, does qualify as a violent felony." (citation omitted)). Because felony assault under § 2903.13(A) requires the knowing use of force, *Borden*—with its carve out for statutes requiring reckless conduct—is inapplicable.

Finally, binding precedent also forecloses Hiraldo's claim that felony domestic violence under Ohio Rev. Code § 2919.25(A) no longer qualifies as an ACCA predicate offense. Like Ohio's felony assault statute, Ohio's felony domestic violence statute requires the "knowing" (as opposed to reckless) use of force. *See* § 2919.25(A) ("No person shall *knowingly* cause of attempt to cause physical harm to a family or household member." (emphasis added)). For this reason, the Sixth Circuit has held that this statute categorically qualifies as an ACCA elements (or use of force) clause violent felony. *See Gatson*, 776 F.3d at 411. And this conclusion remains good law post-*Borden*. *See, e.g., United States v. Mitchell*, No. 21-3896, 2022 WL 12230276, at *3 (6th Cir. Oct. 21, 2022) (citation omitted); *United States v. Mickel*, No. 21-3561, 2022 WL 1100459, at *2 (6th Cir. Apr. 13, 2022) (citing *Gaston*, 776 F.3d at 411).

16

Hiraldo was properly sentenced under the ACCA as an armed career criminal, and there is nothing about the subsequent ruling in *Borden* that undermines this conclusion. The first ground for relief, relating to Hiraldo's ACCA enhancement, is denied.

## V. HIRALDO'S PLEA WAS KNOWING AND VOLUNTARY

Tied to his position that he should have been permitted to plead guilty to "simple possession,"—as opposed to possession with intent to distribute—is Hiraldo's belief that his guilty plea to the distribution charge was not knowing and voluntary. (*See* Doc. No. 31-1, at 4 ("The district court allowed defendant to plead guilty to a non-existing possession with intent to distribute crack cocaine . . . as opposed to simple possession[.]") The Court finds this final objection to Hiraldo's sentence to be without merit.[6]

"A guilty plea is constitutionally valid if it is voluntarily, knowingly, and intelligently entered." *United States v. Boyd*, 518 F. App'x 474, 475 (6th Cir. 2013) (citing, among authority, *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)). Under Fed. R. Crim. P. 11, the district court must verify that "the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequence of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005).

As set forth above, the magistrate judge conducted her plea colloquy in accordance with Rule 11. She only advised that she would recommend that this Court accept Hiraldo's guilty plea after she had reviewed with Hiraldo the nature of the crimes charged and their elements, the

---

[6] To the extent this portion of Ground One does not implicate *Borden*, it would also be time-barred for the reasons previously mentioned.

statutory penalties, the constitutional rights he would be giving up if he decided to enter a guilty plea, and the factual basis supporting the charged offenses. As to each, Hiraldo indicated that he understood and that it was his intention to plead guilty because he was guilty of the charged offenses. The magistrate judge also ensured that Hiraldo had been given sufficient time to confer with his counsel regarding his plea, and that he was satisfied with the representation that he received. Finally, she confirmed that no one had made any promises to him or threatened him to induce his plea, and that he was making the decision to plead guilty as a result of an exercise of his own free will. (Doc. No. 20, at 23–24.)

Based on the foregoing, it is evident that Hiraldo entered a voluntary and knowing guilty plea to possession with intent to distribute a controlled substance, after having been afforded sufficient time in which to consult with counsel, and fully cognizant of the legal consequences of that decision. The fact that Hiraldo now wishes that had been permitted to plead guilty to a different offense does not change the voluntary nature of his plea.

Because Hiraldo's arguments fail to furnish a basis for finding that the Court's within-guidelines sentence was constitutionally infirm, unlawful, or contained a fundamental defect that resulted in a miscarriage of justice, he is entitled to no relief. *See Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014).

## VI. CONCLUSION

For the foregoing reasons, Hiraldo's motion, as supplemented, to vacate, set aside, or correct his sentence is denied. Further, for all of the same reasons, the Court finds that "reasonable jurists" would not debate the Court's denial of Hiraldo's motion to vacate. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: August 7, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**